UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FRANCIS FALLS                                                              CIVIL ACTION

VERSUS                                                                        No. 15-6501

HOUSING AUTHORITY OF
JEFFERSON PARISH, ET AL.                                            SECTION I

<u>ORDER AND REASONS</u>

Before the court is a motion[1] to dismiss for failure to state a claim filed by defendants, Housing Authority of Jefferson Parish ("HAJP"), Juan Patterson ("Patterson"), and Louisiana Housing Development Corporation ("LHDC"). Plaintiff, Francis Falls ("Falls"), has filed an opposition.[2]

Defendants argue in their motion that their denial of plaintiff's request for an extension of time to provide paperwork for a housing choice voucher, allegedly sought by plaintiff because of a disability-related appointment, does not provide plaintiff with a cause of action under either Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("Rehabilitation Act"), or Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHAA").[3] For the following reasons, the Court concludes that Falls does state a claim under those statutes and that defendants' motion must therefore be denied.

---

[1] R. Doc. No. 14.
[2] R. Doc. No. 18.
[3] 42 U.S.C. § 12131 *et seq.*; 29 U.S.C. § 794 *et seq.*; 42 U.S.C. § 3601 *et seq.* Falls alleges violations of the ADA and the Rehabilitation Act only against HAJP and Patterson. R. Doc. No. 1, at 5, 7. He alleges a violation of the FHA as to all three defendants. R. Doc. No. 1, at 9.

**BACKGROUND**

Falls is alleged to be a disabled resident of Orleans Parish.[4]  He claims to be a qualified citizen under the ADA because he is "afflicted with paraplegia," requires a prosthetic arm, and needs a wheelchair for mobility.[5]  In 2011, Falls applied for a federally subsidized housing choice voucher program, commonly known as the Section 8 voucher program, offered through HAJP.[6] The Section 8 voucher program is a tenant-based assistance program allowing eligible low-income families to obtain a subsidy for a portion of their rent at a privately owned housing unit.  *See* 42 U.S.C. § 1437f(o).  The program is funded federally, but it is administered at the state and local levels by public housing agencies.  As a result of his application to the program, Falls was assigned a randomly allotted number and placed on a waiting list.[7]

On October 29, 2015, Falls' number was randomly selected from the waitlist and LHDC—the private contractor that administers the Section 8 voucher program on behalf of HAJP—sent a letter to Falls notifying him that he was selected to receive a Section 8 voucher if he could provide certain documentation confirming his eligibility for the program.[8]  The letter requested that Falls provide the documentation to LHDC by November 12, 2015.[9]  The letter also explained that if an applicant does not timely submit the requested documentation, that applicant will be removed from

---

[4] R. Doc. No. 1, at 2.

[5] R. Doc. No. 1, at 2.

[6] R. Doc. No. 14-1, at 17; R. Doc. No. 1, at 4.  Defendant, Patterson, is allegedly "the political official with chief executive power over the HAJP's programs and services" and he is, therefore, being sued in his official capacity.  R. Doc. No. 1, at 3.

[7] R. Doc. No. 1, at 4; R. Doc. No. 14-1, at 2.

[8] R. Doc. No. 14-1, at 17.

[9] R. Doc. No. 1, at 4.

the waitlist.[10]  Falls alleges that he did not receive the notice until November 11, 2015, the day before the documentation needed to be presented.[11]

Falls allegedly called LHDC on November 12, 2015, requesting a one-day extension to provide documentation because he had a "disability-related medical appointment" on November 12.[12]  LHDC allegedly did not grant the extension and it did not provide a written decision as to why it denied the request.[13]  LHDC claims that it does not have any record of Falls requesting an extension.[14]

LHDC allegedly sent an additional notice to Falls on November 16, 2015 informing him that he would be denied a Section 8 voucher and that his name would be removed from the waitlist unless he provided sufficient justification for failing to provide the required information by the November 12 deadline.[15]  The notice also informed Falls that he could request an informal hearing within ten days of receiving the letter.[16]  Defendants allege that Falls never attempted to provide justification for missing the November 12 deadline and that he did not request an informal hearing.[17]  Nevertheless, as conceded by all parties at the April 5, 2016 status conference, Falls remains on the waitlist as of this date.

On December 4, 2015 Falls instead filed this lawsuit against HAJP, LHDC, and Patterson in his official capacity as chief executive of HAJP.  Falls claims that the denial of a reasonable accommodation in the form of an extension constituted a violation of Title II of the ADA, the

---

[10] R. Doc. No. 14-1, at 3.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] R. Doc. No. 14-1, at 19.
[15] R. Doc. No. 14-3, at 13.
[16] *Id.*
[17] R. Doc. No. 14-1, at 20.

Rehabilitation Act of 1973, and the FHAA.[18]   Specifically, Falls alleges that defendants discriminated against him due to his disabilities when LHDC denied his request for an extension, such request being based on the fact that plaintiff had a disability-related medical appointment scheduled for November 12, 2015.[19]  Falls claims that his request was reasonable and that he was entitled to an accommodation under the ADA, the Rehabilitation Act, and the FHAA.[20]

Falls asks this Court for a declaratory judgment that defendants violated the ADA, the Rehabilitation Act, and the FHAA.  He also requests that the Court enjoin defendants from further discrimination and that it award him compensatory damages and attorney's fees.[21]

## LAW AND ANALYSIS

### I.       Standard under Rule 12(b)(6)

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  As the U.S. Court of Appeals for the Fifth Circuit explained in *Gonzalez v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  It follows that "where the well-pleaded facts do not

---

[18] R. Doc. No. 1, at 6, 8, 10.
[19] *Id.* at 6, 8.
[20] *Id.* at 10.
[21] *Id.* at 11-14.

4

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

"In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).  A document is incorporated in the complaint if it is referred to in the complaint and is central to the plaintiff's claim.  *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).  When matters outside of the pleadings are presented with a Rule 12(b)(6) motion to dismiss, "a district court has complete discretion to either accept or exclude the [additional] evidence." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  When a court considers materials outside of the pleadings, however, the motion to dismiss must be treated as a motion for summary judgment under Rule 56.  *Id.*

In assessing the complaint pursuant to Rule 12(b)(6), a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. System*, 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

## II. The Court declines to treat defendants' motion to dismiss as a motion for summary judgment

Defendants' motion sets forth the legal framework pursuant to which a court may treat a motion to dismiss as a motion for summary judgment.[22]  However, this case is still in its early stages and the parties have not yet had sufficient time to engage in discovery.  The Court therefore declines to convert defendants' motion into one for summary judgment at this time, and it will not consider any affidavits or other exhibits defendants offer in support of their motion that were not incorporated into plaintiff's complaint.  Specifically, when deciding this motion the Court will not consider the October 29, 2013 letter[23] from LHDC to Falls or those portions of Rilene Lapre's affidavit[24] that relate to interactions with Falls prior to the October 29, 2015 letter to Falls from the LHDC.[25]

## III. Plaintiff has standing to assert these claims

The Court first addresses defendants' argument that Falls lacks standing to assert these claims.[26]  A motion to dismiss for lack of Article III standing is properly considered under Rule 12(b)(1).[27]  *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).  "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should

---

[22] R. Doc. No. 14-1, at 4-5.

[23] R. Doc. No. 14-3, at 9.

[24] R. Doc. No. 14-3, at 1.

[25] The Court expresses no opinion as to whether summary judgment may be appropriate after sufficient discovery has taken place.

[26] R. Doc. No. 14-1, at 11.

[27] The Court refers to "Article III standing" because the Supreme Court has also recognized the concept of "prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction'" *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004) abrogated by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) (citation omitted).  While "the continued vitality of prudential 'standing' is now uncertain in the wake of the Supreme Court's recent decision in [*Lexmark*]", *Excel Willowbrook, L.L.C. v. JP Morgan Chase Bank, Nat. Ass'n*, 758 F.3d 592, 603 (5th Cir. 2014), the Court nevertheless refers to Article III standing in order to specify the nature of defendants' standing argument.

consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).[28]  While defendants do not cite Rule 12(b)(1) anywhere in their motion, the Court nevertheless considers their attack on Falls' standing under that Rule.

Article III of the U.S. Constitution limits federal jurisdiction to certain justiciable "Cases" and "Controversies," and a plaintiff must have standing to meet the "case-or-controversy" requirement. *McCardell v. U.S. Dept. of Housing and Urban Development*, 794 F.3d 510, 516-17 (5th Cir. 2015).  Without standing a plaintiff's claim may not proceed. *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Additionally, "a plaintiff must demonstrate standing separately for each form of relief sought."[29]  *Gilbert v. Donahoe*, 751 F.3d 303, 313 (5th Cir.) cert. denied, 135 S. Ct. 251, 190 L. Ed. 2d 137 (2014).

---

[28] Furthermore, unlike a Rule 12(b)(6) motion, "[i]n examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Ramming*, 281 F.3d at 161.

[29] Falls seeks the same relief under all three federal statutes (compensatory damages, a declaratory judgment, and injunctive relief), and courts have recognized that the ADA, the Rehabilitation Act, and the FHAA are all substantially alike. *See, e.g., Super v. J. D'Amelia & Assocs., LLC*, No. 09–CV–831, 2010 WL 3926887, at *3 (D. Conn. Sept. 30, 2010) ("The relevant portions of the FHA, ADA, and Section 504 [of the Rehabilitation Act] offer the same guarantee that a covered entity, such as a Section 8 administrator, must provide reasonable accommodations in order to make the entity's benefits and programs accessible to people with disabilities.  Analysis of a reasonable accommodation claim under the three statutes is treated the same."); *Blatch ex rel. Clay v. Hernandez*, 360 F.Supp.2d 595, 630 (S.D. N.Y. 2005) ("Because the standards for discrimination against the disabled are interpreted similarly in the Rehabilitation Act, ADA, and FHAA, Plaintiffs' Disability Rights Statutes claims can be analyzed together.").  Accordingly, the Court addresses standing under all three statutes in a single inquiry. *See McKivitz v. Twp. of Stowe*, 769 F. Supp. 2d 803, 818 (W.D. Pa. 2010) ("Since the Plaintiffs have standing under Article III to assert their claims under the FHA, they also have standing to pursue their claims under the Rehabilitation Act and the ADA.").

Article III standing is established when a plaintiff has an injury that is: "(1) concrete, particularized, and actual or imminent ([a] so-called injury 'in fact'); (2) fairly traceable to the challenged action; and (3) redressable by a favorable ruling." *McCardell*, 794 F.3d at 517 (citing *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 149 (2010); *Lujan*, 504 U.S. at 555)). A plaintiff seeking injunctive relief also bears the additional burden of establishing a "real or immediate threat that the plaintiff will be wronged" in the future. *Lyons*, 461 U.S. at 111.[30]

Defendants claim that it is unclear from the complaint what injury plaintiff actually sustained from their alleged failure to grant him an extension.[31] Falls contends that the denial of an opportunity to provide paperwork that would allow a move from the waiting list to actual participation in the housing program, combined with violations of the ADA, the Rehabilitation Act, and the FHAA, created a legally cognizable injury.[32]

As the Fifth Circuit has observed, "an injury occurs (and a complete and present cause of action arises) under Title II [of the ADA] when a disabled individual has sufficient information to know that he has been denied the benefits of a service, program, or activity of a public entity." *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011). The plaintiff must show an "actual"

---

[30] "Allegations of 'past wrongs' alone do not 'amount to that real and immediate threat of injury necessary to make out a case or controversy'" sufficient to seek equitable relief. *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 183 (5th Cir. 2015) (quoting *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 n. 23 (5th Cir. 1998)). Past wrongs can be considered, however, as evidence of an actual threat of repeated injury. *Id.* (citation omitted). The continued denial of an opportunity is an ongoing injury and may be sufficient to convey standing to seek injunctive relief. *Ramos v. Uber Techs., Inc.*, No. SA-14-CA-502-XR, 2015 WL 758087, at *7 (W.D. Tex. Feb. 20, 2015) ("[T]he knowledge of noncompliance and the deterrence/loss of opportunity are sufficient to create an existing and ongoing ADA injury . . . .").

[31] R. Doc. No. 14-1, at 12.

[32] R. Doc. No. 18, at 16-17.

or "concrete" plan to use the public service, coupled with a denial of his ability to use that service on account of his disability. *Id.*[33]

First—taking all the well pleaded facts as true—Falls has demonstrated an injury because he has alleged an "actual" or "concrete" plan to use the Section 8 voucher program.  Plaintiff's intention to make use of the voucher program is evidenced by the fact that he applied to it and that he allegedly called the LHDC to request an extension of time so that his name would not be taken off the waiting list.  Those actions are indicative of a person who truly intended to use the program. When Falls was allegedly denied the right to participate in the program because of the lack of a reasonable accommodation, he suffered an Article III injury.

Second, defendants are incorrect in their assertion that Falls fails to allege sufficient facts to prove that his exclusion from the Section 8 voucher program is traceable to their denial of an extension to submit documentation.[34]  Falls alleges that he is a "qualified individual with a disability."[35]  His complaint, liberally construed, claims that but for defendants' denial of the disability-related extension he requested, he would have timely submitted the appropriate paperwork and been admitted to the housing program.[36]  The alleged harm is traceable to defendants.

Third, Falls has adequately demonstrated that his injury is "redressable by a favorable ruling." *McCardell*, 794 F.3d at 517.  Because a court order directing defendants to provide Falls with additional time to submit documentation supporting his eligibility for the Section 8 voucher

---

[33] Falls also requests declaratory relief; however, to obtain it he must show that an actual case or controversy under the ADA exists. *Plumley*, 122 F.3d at 312 (citation omitted).
[34] R. Doc. No. 14-1, at 13-14.
[35] R. Doc. No. 1, at 3.
[36] R. Doc. No. 1, at 5 ("Mr. Falls was denied the opportunity to participate in or benefit from [defendants'] services, programs, or activities, or was otherwise discriminated against by defendants, by reason of Mr. Falls' disability.").

program would restore Falls to the position he was in prior to the alleged discrimination, he has standing to request that equitable relief. *See Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997) (ADA plaintiff seeking injunction must "show that there is reason to believe that he would directly benefit [from] the equitable relief sought").

### IV.     Falls states a claim under the ADA and the Rehabilitation Act

"Title II of the ADA focuses on disability discrimination in the provision of public services." *Frame*, 657 F.3d at 223. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Likewise, Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal funding.[37] *Frame*, 657 F.3d at 223. The same legal standard applies to both the ADA and the Rehabilitation Act and the remedies are the same under both statutes. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010); *see also Delano-Pyle v. Victoria County, Tex.,* 302 F.3d 567, 574 (5th Cir.2002) (noting that the jurisprudence interpreting either statute is applicable to both); *Frame*, 657 F.3d at 223 ("The ADA and the Rehabilitation Act generally are interpreted *in pari materia*.").

"In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make

---

[37] The Rehabilitation Act provides in relevant part:

> "No otherwise qualified individual with a disability in the United States . . . solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

29 U.S.C. § 794(a).

reasonable accommodations for disabled individuals." *Bennett–Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005).   "A claim for failure to accommodate under the ADA has the following elements: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered institution; and (3) the covered institution failed to make reasonable accommodations for such known limitations." *Jin Choi v. University of Texas Health Center at San Antonio*, No. 14-51225, 2015 WL 8592654, at *1 (5th Cir. Dec. 11, 2015) (citing *Neely v. PSEG Texas, Ltd.*, 735 F.3d 242, 247 (5th Cir.2013)).   These elements also apply to Falls' Rehabilitation Act claim.  *See Bennett–Nelson*, 431 F.3d at 454-55.

Falls' complaint, plausible on its face, contains sufficient factual matter to state a claim for relief under the ADA and the Rehabilitation Act.  *See Iqbal*, 556 U.S. 662.  As previously explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Falls alleges with adequate specificity that (1) he is a qualified individual with a disability,[38] (2) he informed defendants of his disability when he explained to them over the telephone that he had a disability-related medical appointment which would prevent him from timely submitting the required documentation,[39] and (3) defendants failed to make a reasonable accommodation when they denied his request for an extension.[40]

In their motion, defendants argue that all claims should be dismissed because Falls failed to allege specific facts setting forth the reasonableness or necessity of his request for a one-day extension.  They claim that Falls' lawsuit should be dismissed because he does not explain why he

---

[38] R. Doc. No. 1, at 2.
[39] R. Doc. No. 1, at 4.
[40] R. Doc. No. 1, at 5.

did not receive the October 29, 2015 letter until November 11, 2015,[41] or why there was insufficient time on November 11, 2015 or on November 12, 2015 in spite of his appointment to gather the required information.[42]   Defendants also argue that Falls should have stated in his complaint the manner in which his medical appointment was related to his disability.[43]

Defendants argue, in essence, that Falls has not plead sufficient facts to permit this Court to conclude at this stage of the proceedings that his request for an accommodation was reasonable. Defendants confuse arguments in support of a Rule 12(b)(6) dismissal with those properly asserted in the summary judgment context.   Falls does not need to prove the reasonableness of his accommodation request in order to survive a motion to dismiss.   All plaintiff is required to show to overcome defendants' motion is that he has plead facts that "raise a right to relief above the speculative level."   *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555.

Falls has sufficiently alleged that he was denied the benefits of the Section 8 voucher program because of his disability.[44]   His complaint states that because of a disability-related appointment, he required additional time to submit documentation to LHDC.   He allegedly requested a one-day extension of the deadline, informing defendants that the reason for his request

---

[41] R. Doc. No. 14-1, at 6.
[42] R. Doc. No. 14-1, at 7-9.
[43] R. Doc. No. 14-1, at 9.
[44] Falls' opposition improperly focuses, to an extent, on his belief that defendants' motion should be denied because his complaint satisfies the requirements of a *prima facie* case under the ADA and the Rehabilitation Act.   *See* R. Doc. No. 18, at 21.   But it is not necessary for a plaintiff to make out a *prima facie* case in order to overcome a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (explaining that the *prima facie* case is an "evidentiary standard, not a pleading requirement"); *Stone v. Louisiana Dep't of Revenue*, 590 F. App'x 332, 339 (5th Cir. 2014) cert. denied, 135 S. Ct. 2814 (2015) ("[A] plaintiff need not make out a *prima facie* case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim.").
Indeed, all of the cases cited by plaintiff discussing the *prima facie* showing that a plaintiff must make in an ADA case do so in the context of evaluating a motion for summary judgment, not a motion to dismiss for failure to state a claim.

was the disability-related appointment.  Falls was denied the extension and the opportunity to be approved for the federally subsidized housing when his documentation was not timely received. As a result of defendants alleged actions, Falls will have to once again wait until his number is randomly selected from the waitlist before he will have the opportunity to qualify for subsidized housing.

It is not clear at this stage of the litigation whether Falls' request for the extension *was* reasonable, but his complaint alleges sufficient facts to permit this Court to conclude that his request *might have been* reasonable.  While defendants may complain that Falls' complaint does not contain certain facts which are relevant to the reasonableness determination, a complaint is not deficient simply for failing to cite all evidence relevant to the dispute.  Defendants' motion as to the ADA and Rehabilitation Act claims is denied.[45]

### V.      Falls states a claim under the FHAA

"Expanding on the previously enacted Fair Housing Act (FHA), which prohibited discrimination in housing based on race, color, religion, and national origin, the FHAA responded to a recognized prejudice against those with physical disabilities and illness and against people with mental retardation who have been excluded because of stereotypes about their capacity to live safely and independently."  *Groome Res. Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 201 (5th Cir. 2000) (internal quotations and citations omitted).  The FHAA makes it illegal "to discriminate

---

[45] To the extent that defendants argue that Falls' claim should be dismissed as moot because he has already been provided past accommodations, *see* R. Doc. No. 14-1, at 15-17, the Court notes that this argument is without merit.  First, as the Court explains above, evidence relating to exchanges between Falls and defendants that occurred before the particular discriminatory act alleged in the complaint may not be considered by this Court in evaluating a Rule 12(b)(6) motion. Second, even if the Court were to consider the prior exchanges, that evidence would at most be relevant to determining whether Falls' latest accommodation request was reasonable—a determination that the Court need not make in deciding the motion to dismiss.

in the sale or rental, or to otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap."   42 U.S.C. § 3604(f)(1).   Falls contends that all three defendants specifically violated 42 U.S.C. § 3604(f)(3)(B), which defines discrimination as "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling."[46]

Defendants do not specifically address the FHAA in their motion and therefore arguably waive any challenge to that statute.  In any event, however, courts treat this type of disability-related FHAA claim as substantially identical to claims under the ADA and the Rehabilitation Act. *See, e.g., Super*, 2010 WL 3926887 at *3 ("The relevant portions of the FHA, ADA, and Section 504 [of the Rehabilitation Act] offer the same guarantee that a covered entity, such as a Section 8 administrator, must provide reasonable accommodations in order to make the entity's benefits and programs accessible to people with disabilities.  Analysis of a reasonable accommodation claim under the three statutes is treated the same."); *Hernandez*, 360 F.Supp.2d at 630 ("Because the standards for discrimination against the disabled are interpreted similarly in the Rehabilitation Act, ADA, and FHAA, Plaintiffs' Disability Rights Statutes claims can be analyzed together.").

Accordingly, given the Court's conclusion above that Falls states a claim pursuant to the ADA and the Rehabilitation Act, the Court also concludes as a matter of law that Falls states a claim pursuant to the FHAA.

---

[46] R. Doc. No. 1, at 10.  A handicap under the FHA is defined the same as a disability under the ADA.  *See Oxford House, Inc. v. City of Baton Rouge, La.*, 932 F. Supp. 2d 683, 688 (M.D. La. 2013).

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that defendants' motion to dismiss is **DENIED**.


New Orleans, Louisiana, April 6, 2016.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**
